NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICIA RODGERS, | : |
| *Plaintiff,* | : Civil Action No. 13-7767 |
| v. | : OPINION |
| | : July 1, 2015 |
| CAROLYN W. COLVIN, | : |
| Acting Commissioner of Social Security, | : |
| *Defendant.* | : |

ARLEO, UNITED STATES DISTRICT JUDGE.

Before this Court is Plaintiff Patricia Rodgers' ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g), of the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's application for Supplemental Security Income Benefits ("SSI"). Plaintiff argues that: (1) the Commissioner's decision was not supported by substantial evidence; and (2) the Commissioner erred in failing to submit a requested limitation to the Vocational Expert ("VE"). For the reasons set forth in this Opinion, the Court finds that the Commissioner's decision is supported by substantial evidence, and therefore must be **AFFIRMED**.

I. STANDARD OF REVIEW AND APPLICABLE LAW

A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if there exists substantial

evidence to support the decision. 42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973).

### B. The Five-Step Disability Test

In order to determine whether a claimant is disabled, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). First, it must be determined whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial

gainful activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay. 20 C.F.R. § 404.1572. If it is found that the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). The regulations provide that an impairment or combination of impairments is severe only when it places a significant limit on the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment or its equivalent. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner must ask at step four whether the claimant has residual functional capacity ("RFC") such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied. Id. Finally, if the claimant is unable to engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in significant numbers in the national economy" that the claimant is capable of performing in light of "his medical impairments, age, education, past work experience, and 'residual functional capacity.'" 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); Jones, 364 F.3d at 503. If so, the claim for benefits must be denied. The claimant bears the

burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Under 42 U.S.C. § 405(g) and Third Circuit precedent, this Court is permitted to "affirm, modify, or reverse the [Commissioner's] decision with or without a remand to the [Commissioner] for a rehearing." Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984); Bordes v. Comm'r of Soc. Sec., 235 F. App'x 853, 865-66 (3d Cir. 2007). While an outright reversal with an order to award benefits is permissible in the presence of a fully developed record containing substantial evidence that the claimant is disabled, the Court must order a remand whenever the record is incomplete or lacks substantial evidence to justify a conclusive finding at one or more of the five steps in the sequential analysis. See Podedworny, 745 F.2d at 221-22.

## II. BACKGROUND

### A. Procedural History

This case arises out of Plaintiff's application for SSI filed on July 8, 2010, which was denied initially on February 2, 2011, and on reconsideration on July 23, 2011. Tr. 20, 86-88, 99, 114, 120-22. Plaintiff then sought review before an administrative law judge, and a hearing before the Honorable Barbara Dunn (the "ALJ") occurred on June 27, 2012. Tr. 20. Following the hearing, the ALJ issued a decision on July 27, 2012, in which she found that Plaintiff was not disabled because jobs existed in significant numbers in the national economy that Plaintiff could perform. Tr. 20-28. Plaintiff then sought review before the Appeals Council, a request that was denied on October 25, 2013. Tr. 5-7. Having exhausted her administrative remedies, Plaintiff then timely filed the instant action on December 21, 2013. Dkt. No. 1, Compl.

**B. Factual Background**

Plaintiff is a 43-year-old woman who alleged in her application for SSI that she had been disabled since January 1, 2010. Tr. 101. Plaintiff claims that she suffers from depression, bipolar disorder, cyclothymic disorder, chronic migraines, chronic depression, asthma, and anxiety, the severity of which prevent her from performing her prior work as a cashier. See Tr. 101-02, 191, 249. Plaintiff also has a history of substance abuse, although it has been in remission since 2003. See Tr. 255, 299, 385. Due to her anxiety, Plaintiff claims to leave her house only to go to doctor's appointments, although she attends services at her mosque, sometimes four days per week, and talks to people there. Tr. 49-51, 205, 300. Instead of going outside, Plaintiff does daily housework, such as cooking and taking care of her children, so long as her migraines permit. See Tr. 49, 205, 214, 300. She also claims to have mood swings as a result of her bipolar disorder. See Tr. 299. She says that some days her depression causes her to feel sad, to the point of not leaving her bed. Tr. 53. Plaintiff further states that during her migraines she is sensitive to excessive noise and light, and that she cannot read for more than thirty minutes at a time because doing so will cause a migraine. Tr. 42, 52-53. In addition, she suffers up to two asthma attacks per year, though her asthma has been controlled by the medications Albuterol and Advair. Tr. 268, 279, 308. In order to treat her various conditions, Plaintiff has been prescribed medications such as Butalbital for her migraines, Methadone for her substance abuse, and Abilify, Elavil, Lexapro, and Zoloft for her depression and bipolar disorder. Tr. 202, 227, 382-83, 426.

Based on the evidence, it appears that Plaintiff began seeking treatment for her asthma, migraines, and allergies with Dr. Augustine Eleje on or around March 1, 2006. See Tr. 293. Plaintiff then began treatment with Dr. Mary Cantey, as her primary physician for the same

disorders, from February 14, 2007, until about August 25, 2010. See Tr. 265, 288. As treatment progressed, the complaints of migraines became less persistent, and at one point had stopped completely, before resuming in late 2009. See Tr. 275, 277-85. On August 25, 2010, Dr. Cantey recorded, however, that Plaintiff's migraines had improved. Tr. 265. At the same visit, Dr. Cantey also noted that Plaintiff had been seen by neurologists to examine her migraines.[1] Tr. 265. Dr. Cantey also treated Plaintiff's depression, which she noted had been controlled by Amytriptyline. Tr. 275, 279, 283. Lastly, Dr. Cantey had treated Plaintiff's asthma, which was controlled by both Advair and Albuterol. Tr. 268, 279.

Dr. Stuart Belenker, Plaintiff's psychiatrist, and Dr. Frank Baffige, Plaintiff's therapist, conducted a joint initial examination of Plaintiff on June 1, 2010, at the UMDNJ. Tr. 384. Plaintiff complained primarily of stress and depression, and though she had a one-time suicidal ideation in 2006, she had not had another since then or on any other occasion. See Tr. 384-85. Her interpersonal problems were recorded, as well as possible psychological and cognitive issues. See Tr. 386-87. The examination did, however, indicate that Plaintiff "has friends" and "can be social." Tr. 386. It was also recorded that she was "fully oriented," had "average" intelligence, and "good" remote memory. Tr. 389. Ultimately, Plaintiff was determined to have a global assessment of functioning ("GAF") score of 51, indicating "Moderate Symptoms or Difficulty in Functioning."[2] Tr. 390. Dr. Belenker continued to monitor Plaintiff once a month,

---

[1] Dr. David A. Marks, a neurologist at the University of Medicine and Dentistry of New Jersey ("UMDNJ") examined Plaintiff's migraines. Tr. 327. Dr. Marks performed an examination on Plaintiff on August 16, 2011, and opined that the headaches may be stress related. Id. Results from a CT scan indicated them to be "tension headaches," and Dr. Marks advised exercising more as a means to reduce severity. Id.

[2] Dr. Belenker used the DSM-IV multi-axial scale for his diagnosis. Axis I deals with clinical disorders (such as bipolar disorder); Axis II deals with personality disorders; Axis III deals with general medical conditions; Axis IV deals with psychosocial and environmental

occasionally indicating minimal improvement and progression towards her goals. See, e.g., Tr. 409. It had been consistently recorded that Plaintiff could sleep for at least five hours per night on most nights, and that her anxiety was decreasing. See, e.g., Tr. 391. In March of 2011, Dr. Baffige had indicated that Plaintiff had been missing therapy due to problems with her son. See Tr. 414. A report dated September 9, 2011, however, indicates that Plaintiff had attended a therapy session on that date. See Tr. 446.

On November 17, 2010, Dr. Marc Friedman performed a mental examination on Plaintiff at the request of the New Jersey Division of Disability Services, as part of the SSI application process. See Tr. 299-301. Dr. Friedman found that Plaintiff had been diagnosed with bipolar disorder, but had stopped the treatment. Tr. 299. He also indicated that a prescribed medication, Butalbital, relieved her tension headaches after one half hour. Id. Dr. Friedman indicated that Plaintiff spoke clearly, had good eye contact, had no hallucinations or delusions, and had no reporting of suicidal ideation or intent. Tr. 300. Overall, her intelligence was estimated to be in the low-average range, with her memory being mildly impaired, though she had adequate concentration. Id. She was able to perform routine housework during the day, attended her mosque service twice a week, and talked to relatives on the phone. Id. His final diagnosis was bipolar disorder, and a GAF score of 55. Tr. 301. His conclusion and recommendations were that the claimant was capable of managing funds without assistance, and the prognosis was fair with continued treatment, which he expected to last at least one year. Id.

On January 18, 2011, Dr. Rambhai C. Patel, also performed an examination on Plaintiff, at the request of the New Jersey Division of Disability Services. See Tr. 305-12. Plaintiff

---

problems; and Axis V deals with the person's GAF. The Court notes that DSM-IV was supplanted by DSM-5 on May 18, 2013, and DSM-5 no longer uses the multi-axial system. At the time of Dr. Belenker's examination, however, the multi-axial diagnostic system was widely accepted as the best tool for assessing mental disorders.

claimed that, although medication helped, her headaches occurred around six times per week, and could last anywhere from thirty minutes to an hour. Tr. 308. Plaintiff also claimed she suffered from bipolar disorder, aided by medication, with "episodes" up to four times per week. Id. Dr. Patel also noted Plaintiff's asthma, which could cause up to two attacks per year, was controlled by medication. Id. Dr. Patel ultimately diagnosed Plaintiff with bipolar disorder, and noted a history of chronic headaches and chronic asthma. Tr. 310.

On appeal before the Appeals Council, Plaintiff also included two pieces of evidence that were generated after the ALJ's decision. See Tr. 5, 448-460. First, on an examination report recorded on September 2, 2012, Dr. Belenker indicated that Plaintiff had suffered from depression, bipolar disorder, and anxiety. Tr. 458. He also indicated that these disorders would last at least one year, that Plaintiff was unfit to work, and that Plaintiff is a likely candidate for SSI. Tr. 459. Second, Plaintiff included medical documents indicating a positive test for Herpes Simplex 1 & 2, which had been recorded on July 27, 2012. Tr. 453. The Appeals Council considered the evidence, but nonetheless denied the appeal. See Tr. 5.

### C. The ALJ's Decision

In her July 27, 2012, decision, the ALJ first noted that Plaintiff was not engaging in substantial and gainful activity since the application date of July 8, 2010, and that Plaintiff suffered from the following severe impairments: (1) migraine headaches; and (2) bipolar disorder. Tr. 22. The ALJ determined, however, that Plaintiff's history of substance abuse was not material to the severity determination because the records indicated that the claimant was in remission. Id. Having found that Plaintiff satisfied steps one and two of the analysis, the ALJ moved on to step three, in which she found that Plaintiff's impairments or a combination thereof did not meet or equal a listed impairment. Id.

In reaching the step three determination, the ALJ first considered Plaintiff's history of substance abuse under Listing 12.09 (substance addiction disorders) of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"). Id. The ALJ determined that it did not "meet or medically equal the criteria of that listing." Id.

Next, the ALJ determined that the mental impairments, "considered singly, and in combination, do not meet or medically equal the listing of 12.04, 3 [(affective disorders; schizophrenic, paranoid, and other psychotic disorders)]." Id. The ALJ determined that Plaintiff did not have bipolar syndrome with the "full symptomatic picture of both manic and depressive syndromes, and currently characterized by either or both symptoms." Id. In determining this, the ALJ measured the mental impairments against the "paragraph B" criteria of Listing 12.00 (Mental Disorders – Adult) in Appendix 1, which are: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation. Tr. 23. "Marked" is characterized as "more than moderate but less than extreme." Id. The ALJ determined that restrictions of daily living were mild, restrictions of social functioning were moderate, restrictions on concentration, persistence, or pace were moderate, and there were no repeated episodes of decompensation. Id. As a result, Plaintiff did not meet the required, "two 'marked' limitations, or one 'marked' limitation and 'repeated' episodes of decompensation." Id.

Next, the ALJ did a "paragraph C" assessment of Listing 12.00 in Appendix 1 for the claimed mental impairments. Id. The ALJ first determined that Plaintiff did not have a "medically documented history of a[n] . . . other mental impairment or affective disorder of at least two years' duration causing more than a minimal limitation of ability to do basic work . . . with repeated episodes of decompensation, each of extended duration." Id. Next, the ALJ

determined that Plaintiff did not have a "residual disease process" that would result in decompensation with a "minimal increase in mental demands or change in the environment." Id. Lastly, the ALJ determined that the evidence did not establish current history of one or more years' inability to function outside of a supportive living arrangement. Id. Having determined that Plaintiff did not satisfy any step three listing requirements, the ALJ proceeded to step four.

At step four, the ALJ first determined Plaintiff's RFC. Tr. 23-24. The ALJ determined that Plaintiff had an RFC which permitted simple, routine tasks on a sustained basis, and a full range of work at all exertional levels, but with the following nonexertional limitations: (1) she can be exposed to dust, fumes, or gases no more than occasionally; (2) she cannot climb ladders, ropes, or scaffolds; (3) no more than occasional public contact; and (4) she cannot be exposed to bright lighting, or to greater than moderate noise level. Id.

In determining Plaintiff's RFC, the ALJ first looked to Plaintiff's testimony regarding her subjective feelings of pain from her migraines, as well as her uneasy feeling of being around people, her claimed mood swings, and her asthma. See id. The ALJ, however, also weighed the statements from Plaintiff against the objective evidence in the record. See Tr. 25. The ALJ considered the evidence from Dr. Marks and Dr. Nelson O. Aluya, who were the diagnosing neurologists of Plaintiff's tension headaches, as well as evidence from Dr. Belenker, who treated Plaintiff's headaches. Id. The ALJ found the pain from the headaches to be legitimate, as shown by the inclusion of the proposed noise and light limitations in the RFC determination. See Tr. 24, 71-72.

The ALJ then also considered evidence from Dr. Cantey, who indicated that Plaintiff's asthma was under control with medication. Tr. 25. The ALJ considered evidence from Dr. Patel, who examined Plaintiff's headaches, asthma, and bipolar disorder. Id. The ALJ further

noted that Plaintiff's history of substance abuse had been in remission since 2003. Id. Lastly, the ALJ considered the findings of Dr. Friedman, Dr. Cantey, and Dr. Belenker regarding Plaintiff's depression, bipolar disorder, and mental capacity. See id. The ALJ noted that Dr. Belenker was the only doctor who had explicitly indicated that Plaintiff was unfit to work; however, in indicating so, he had gone against the evidence in the record, and against his own findings. Tr. 26. Thus, the ALJ gave the opinion of Dr. Belenker "little weight." Id.

The ALJ gave "great weight" to Dr. Friedman's November 17, 2010, report, as well as the Disability Determination Explanation Reports ("DDS Reports"), regarding Plaintiff's mental limitations. Tr. 26. Dr. Friedman indicated that Plaintiff was alert, and able to provide a coherent history. Id. Dr. Friedman also noted that Plaintiff had good eye contact, no hallucinations or delusional thinking, and no suicidal thoughts. Id. The ALJ also acknowledged that Dr. Friedman diagnosed Plaintiff with bipolar disorder, a GAF of 55, was competent to manage funds without assistance, and had a fair prognosis. Id.

After determining Plaintiff's RFC, the ALJ consulted with a VE to determine if Plaintiff could perform past relevant work. Id. After determining that Plaintiff could not perform past relevant work, the ALJ had to determine if Plaintiff could perform other jobs that existed in significant numbers in the national economy. Tr. 27. The VE provided the ALJ with three of such jobs, using Plaintiff's RFC, age, education, and work experience. See id. Relying upon the testimony of the VE, in conjunction with the Dictionary of Occupational Titles, the ALJ concluded that a significant number of other jobs existed. See id. Accordingly, the ALJ determined that Plaintiff was not disabled. Tr. 28.

## III. DISCUSSION

### A. The ALJ's RFC Determination

Plaintiff argues that the Commissioner did not properly evaluate the medical evidence and, in failing to do so, did not give proper weight to the complaints of the headaches, asthma, and mental impairments suffered. The issue, however, to be determined by this Court is not whether it agrees with the ALJ's ultimate determination, but rather if there is substantial evidence to support the decision rendered. See Hagans, 694 F.3d at 292.

#### 1. Commissioner's Evaluation of Medical Evidence

In rendering her decision, the ALJ points to the same examinations and testimony that Plaintiff has used as a basis for her own arguments. Plaintiff, however, argues that the ALJ did not provide reasoning for rejecting certain evidence, and that the ALJ failed to expressly state which pieces of evidence she was primarily relying upon. See Plummer v. Apfal, 186 F.3d 422, 429 (3d Cir. 1999) (citing Stewart v. Sec'y of H.E.W., 714 F.2d 287, 290 (3d Cir. 1983)). The Court disagrees.

In reaching her decision, an ALJ must consider all pertinent evidence and explain her reasons for discounting contradictory evidence. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121-22 (3d Cir. 2000). The opinion of a treating physician, such as Dr. Belenker, is due controlling weight, so long as it is not inconsistent with the substantial evidence of the record, and is well-supported by medically acceptable techniques. 20 C.F.R. § 416.927(d)(2); Plummer, 186 F.3d at 429 (quotation omitted). Nevertheless, "a treating physician's opinion may be rejected on the basis of contradictory medical evidence, or may be accorded less weight depending upon the extent to which a supporting explanation is provided for the opinion."

Cunningham v. Comm'r of Soc. Sec., 507 F. App'x 111, 118 (3d Cir. 2012) (citing Plummer, 186 F.3d at 429 (quotation omitted)).

The ALJ expressly stated that she gave "great weight" to the findings made by Dr. Friedman, the examining physician, and the DDS Reports, while giving "little weight" to the findings made by Dr. Belenker. Tr. 26. The ALJ stated that Dr. Belenker's findings indicated that Plaintiff had no suicidal thoughts, average intelligence, was fully oriented, and had intact concentration. See Tr. 26, 384-90. Dr. Belenker also found that Plaintiff did not have any violent behavior, signs of mania, or hospitalization due to her mental illness. See id. Dr. Belenker's report also indicates that Plaintiff "can be social" and "has friends." Tr. 386. The ALJ compared these findings to the findings of Dr. Friedman, and the record as a whole, and reasonably decided that Dr. Belenker's opinion that Plaintiff was "unfit to work" was not corroborated by either the objective medical evidence or his own treating notes. See Tr. 26. Thus, the Court finds that the ALJ's reasoning for rejecting Dr. Belenker's opinion was adequately stated, and the ALJ's decision to afford it little weight is supported by substantial evidence.

Plaintiff also contends that the "paragraph B" and "paragraph C" mental impairment determinations made by the ALJ were unsupported by the evidence. She takes exception to the ALJ's finding in the "paragraph C" determination that the "minimal" standard of the limitation to doing basic work had not been met. The evidence in the record, however, gives no indication of "repeated episodes of decompensation" which is a necessary element of fulfilling "paragraph C." See Tr. 23, 83, 95, 106. In addition, the evidence throughout the record largely indicates that Plaintiff is able to perform basic housework, as indicated through her own admission that she cooks, cleans, and takes care of her children. See Tr. 205, 300. Therefore, the ALJ was correct

in determining that there was not more than a "minimal limitation in performing basic work, with repeated episodes of decompensation." Tr. 23. Regarding the "paragraph B" determination, the ALJ noted that she gave "great weight" to the DDS Reports, which indicated that the impairments did not satisfy "two marked or one marked with repeated episodes of decompensation" requirement. Tr. 26, 82-83, 95, 106. Thus, the ALJ's determinations at paragraphs "B" and "C" for the mental impairments are supported by substantial evidence. Tr. 82-83, 95, 106.

### 2. Commissioner's Credibility Assessment of Subjective Statements

Plaintiff argues that the Commissioner needed to make specific findings of fact in determining that Plaintiff's subjective statements were not credible, and did not amount to a disability. See Hargenrader v. Califano, 575 F.2d 434, 436 (3d Cir. 1978). Plaintiff, however, bears the burden of proof in providing objective medical evidence in support of the extent to which her subjectively declared impairments would reasonably be expected to limit her. See 42 U.S.C. § 423 (d)(5)(A); see also 20 C.F.R. § 416.929(b); accord Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (holding that the objective medical evidence did not corroborate the subjective impairments claimed). Ultimately, the ALJ has the discretion to evaluate the credibility of Plaintiff, and to render an independent judgment in light of the objective medical evidence provided. LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988) (quoting Brown v. Schweiker, 562 F. Supp. 284, 287 (E.D. Pa. 1983)). Nonetheless, "[w]here a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence." Chrupcala v. Heckler, 829 F.2d 1269, 1276 n.10 (3d Cir. 1997). In this case, the ALJ properly indicated that the objective medical evidence produced by Plaintiff did not support a finding of a disability.

The ALJ made note of all of Plaintiff's various impairments alleged, and expressly addressed them using medical evidence from the record. For example, the ALJ noted findings made by Dr. Marks in diagnosing the headaches as "tension headaches" following a CT exam. Tr. 24. The ALJ also noted the treatment provided by Dr. Cantey, and addressed Plaintiff's asthma, saying that it had been controlled with her medication. Tr. 25. Additionally, the ALJ acknowledged Dr. Belenker's suggestion of Plaintiff being unfit to work, though dismissed it due to its contradiction of the record as a whole, and his own individual findings. Tr. 26. Plaintiff also argues that she suffers from suicidal thoughts; however, they were a self-admitted one-time occurrence in 2006. See Tr. 300, 384-85. The ALJ also expressly relied upon the findings of Dr. Friedman and the DDS Reports, which had supported the inclusion of some of Plaintiff's proposed limitations in Plaintiff's RFC, but did not warrant complete deference to all of Plaintiff's complaints. See Tr. 26-27. Ultimately, the Court finds that the ALJ made the proper, specific, findings of fact regarding the credibility of Plaintiff's subjective statements, in light of the objective evidence.

Additionally, the Court finds that the pieces of evidence introduced subsequent to the ALJ's decision do not warrant remand. Regarding Dr. Belenker's report, the ALJ explicitly stated that she afforded his opinion "little weight," and the remarks in his report that Plaintiff should qualify for SSI, without more, are unimpressive to the Court. Tr. 26, 458-59. Regarding the contraction of Herpes, Plaintiff failed to identify any limiting effects caused by its contraction. Tr. 448-460. Furthermore, the Appeals Council had notice of both pieces of evidence and was not swayed by them, as shown by their denial of the request for appeal. See Tr. 5, 448.

15

Based on the extent to which the ALJ examined each individual impairment, and how she supported her decision by citing to many of the various doctors' examinations and findings, the Court is satisfied that the ALJ provided "a clear and satisfactory explication of the basis on which [her RFC determination] rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).

### 3. Proposed Break Limitation

Finally, Plaintiff argues that the ALJ erred in failing to include a requested limitation in determining Plaintiff's RFC, specifically that Plaintiff must be afforded an extra one to two hours of break per day for her headaches. Tr. 76. While Plaintiff is correct that the questions posed to the VE must "accurately portray the claimant's physical and mental limitations," Schonewolf v. Callahan, 972 F. Supp. 277, 289 (D.N.J. 1997), the ALJ does not have to take into account every limitation alleged by the claimant. See Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (citing Podedworny, 745 F.2d at 218). Rather, the ALJ must convey only the claimant's credibly established limitations. See id.

In failing to ultimately impose the proposed limitation, that Plaintiff must be provided one to two hours of added break, the ALJ decided that the evidence in the record did not support such a limitation. The ALJ noted that she afforded "great weight" to Dr. Friedman's report, which found that the headaches would start to be relieved after thirty minutes with medication. Tr. 26. Furthermore, in Dr. Patel's report, the headaches were claimed to last "thirty minutes to an hour." Tr. 308. The ALJ reasonably determined that these findings did not give credibility to the requested limitation.

Because the ALJ did not err in excluding the requested limitation, and the VE testified that there are enough jobs in the national and regional economies for a person with Plaintiff's RFC, the ALJ properly concluded that the Commissioner met its burden at step five. See Craigie

v. Bowen, 835 F.2d 56, 58 (3d Cir. 1987) (finding 200 total regional jobs to be "clear indication" that significant work in the national economy existed); see also Ahmad v. Comm'r of Soc. Sec., 531 F. App'x 275, 278 (3d Cir. 2013) (citing Craigie with approval and holding that 569 jobs was sufficient).

## IV. CONCLUSION

Because the Court finds that the ALJ's decision is supported by substantial evidence, the Commissioner's disability determination is **AFFIRMED**. An appropriate order will follow.

/s *Madeline Cox Arleo*
HON. MADELINE COX ARLEO
UNITED STATES DISTRICT JUDGE